DAVID B. DENNIS ET AL., EXECUTORS FOR HENRY C. LEWIS v. SELLECK W. SHARER, AND CHARLES E. CULVER.

SELLECK W. SHARER v. DAVID B. DENNIS ET AL., EXECUTORS, AND CHARLES E. CULVER.

*Personal covenant in mortgage— Will conditioned on payment by legatees of debts—Transfer of obligation.*

1. A personal covenant in a mortgage will bind the mortgager's personal estate after his death.

2. Where a will was conditioned on the payment of testator's debts by two legatees, and one of them agreed with the other to pay his share according to the amount of the indebtedness as found by the probate

judge. the party so agreeing could not charge the other with a payment which he had made before such finding if he had never filed a claim for its amount against the estate for allowance; and the finding of the probate court would be conclusive, under the agreement, as to the amount due from each.

3. S owed C, and C owed D. S agreed to "become responsible" for C's debt to D, and obtained an extension of the time for payment. *Held*, that this arrangement did not discharge C, who was no surety and who was in no way prevented from paying his debt at maturity.

4. One legatee gave bond to another to pay the latter's share of the debts of the estate, and the latter left moneys in his hands wherewith to do so. Upon a settlement it appeared that the bond was drawn for too high a sum, and by direction of the parties the judge of probate indorsed the balance upon it. *Held*, that this indorsement was only res gestæ as the memorandum of a disinterested person, and that it need not be signed by either party.

5. Where property was left by a testator subject to the condition that the legateê should pay the debts of the estate, an agreement between such legatees that one of them should surrender his share of the estate to the other, if the latter would pay his share of the debts, is based on a good consideration, and is valid and binding if the parties are competent to contract.

Appeal from Branch. (Pealer, J.) Jan. 7–8.—April 9.

BILL to foreclose: cross-bill for allowance. Culver gave a mortgage to Dennis for $1000, and assigned to him as collateral a mortgage which Sharer had given him. Dennis assigned both to Lewis, and Lewis sought to foreclose against Sharer and Culver. Sharer filed a cross-bill against Lewis and Culver, asking that so much as he claimed to have paid on his mortgage to Culver should be credited thereon. Sharer appeals. Affirmed in substance.

*Frank N. Skeels* for executor; *Paul Eaton* for Culver.

*Barlow & Loveridge*, and *John B. Shipman* for Sharer.

CHAMPLIN, J. The original bill was filed by Henry C. Lewis to foreclose a mortgage executed by Sharer to Culver and by him assigned to David B. Dennis as collateral security to a note and mortgage given by Culver to Dennis, dated the 5th day of May, 1875, to secure $1000 four years from

date, with interest at ten per cent., payable annually. The bond and mortgage in suit, which was held by Lewis as collateral, had its origin as follows:

Jonathan E. Culver died testate, seized at the time of his death of certain real estate, and the owner of quite an amount of personal estate. He also owed debts to a considerable amount. Charles E. Culver is his son, Selleck W. Sharer his son-in-law, and Mary C. Sharer his daughter. He left a widow, whose name is Clara. By his last will he bequeathed and devised certain real and personal estate to his wife. He also devised to his son, Charles E., real estate of the value of $6200 ; to his daughter, Mary C., real estate of the value of $3575 ; to his son-in-law, Selleck W. Sharer, real estate of the value of $1200. He also made 'bequests of his personal property to said Charles E. Culver, to Selleck W. Sharer, and to Hobart W. Sharer. He then bequeathed to Selleck W. Sharer and Charles E. Culver, jointly, all stock on the farm, except one cow and ten sheep, all hogs and horses, all farming tools and implements and machinery, of the value at his death of $2141.25. And he incorporated in his will the following condition: " This will is conditioned that Charles E. Culver and Selleck W. Sharer hold themselves, and the property made over to them in the above will, liable for all legal claims which may come against said property." Some time after the death of Jonathan Culver Charles E. Culver sold and conveyed to Selleck W. Sharer the land devised to him for the consideration of $6000, no part of which was paid down, but Sharer secured the payment thereof by the execution of the bond and mortgage in suit, which bond is as follows:

" Know all men by these presents, that I, Sellick W. Sharer of Matteson, county of Branch and state of Michigan, am held and firmly bound unto Charles E. Culver of the same place, in the penal sum of five thousand dollars, well and truly to be paid to said Culver, his heirs, executors, administrators and assigns, if default be made in the conditions of this bond hereinafter specified, and for which I bind myself, heirs, executors, administrators, and assigns firmly by these presents. Signed with my hand and sealed

with my seal, and dated at Colon, St. Joseph county, Michigan, this 18th day of July, A. D. 1873. Now, the conditions of these presents are these: The parties hereto are legatees of the late Jonathan H. Culver, of said Matteson, deceased, and are liable severally, in proportion to the amount of their respective legacies, for all debts and charges, present and prospective, against the estate of the said deceased Mr. Culver. And whereas the said Charles E. Culver has this day sold and deeded to the said Sellick W. Sharer his land given and devised to him, the said Charles E., in and by the last will and testament of his father, the said Jonathan H. Culver: And now comes the said Sellick W., and hereby promises and binds himself, heirs, &c., to pay the said Charles E., his heirs, &c., for the said land as follows, to wit: One thousand dollars within one month of this date, cash; then next to pay, as of the date of the decree or order of payment of the said debts, by his honor the judge of probate of Branch county, all of the proportion of said debts that may be the just and equitable share of the said Charles E. Culver, and saving him at all times harmless therefrom, provided it shall not exceed the sum of five thousand dollars, that being the sum left in said Sharer's hands for said purpose, and for no other, except in case following, to wit: After the final and full determination of the said share of the said Culver's liability, the amount for him to pay of the said debts and probable costs and charges as a said legatee, if there shall be and remain in the hands of the said Sharer any part of the said sum of the said five thousand dollars, that portion remaining the said Sharer promises to pay to said Culver in four equal annual payments; installments, with interest, commencing on the day of the final adjustment of the amount due of debts, costs and charges as aforesaid, and date of the commencement of the first year, for first installment, same time. A note is given for the said thousand dollars, due in one month. The interest on the said installments is to be at the rate of ten per centum per annum.

Witness the hand and seal of the said Sharer at Colon, St. Joseph county, Michigan, this date above first set forth written.

SELLICK W. SHARER. [Seal.]

Signed, sealed, and delivered in presence of
LOUIS A. LELAND,
C. SCHELLHOUSE."

At this time the estate was in process of settlement by an administrator with the will annexed. There was some litigation causing delays, and the final order establishing the amount of the claims for which the estate was liable was not made until April 11, 1882.

On May 5, 1877, D. B. Dennis, then being the holder of the note and mortgage first mentioned, and also the bond and mortgage executed by Sharer as collateral thereto, received from Sharer the following writing :

"This is to certify that D. B. Dennis is the holder of a mortgage against Charles E. Culver for one thousand dollars, dated May 5, '75, and ten per cent. interest. There is due and unpaid on said mortgage eleven hundred dollars, May 5, '77 ; and said Dennis also holds my bond and mortgage, given to Charles E. Culver as collateral to his mortgage. I now agree to become responsible to said Dennis for the amount due on Culver mortgage, and to pay the same with annual interest at ten per cent., on or before one year from January 8th, 1878 ; the same to be endorsed on my bond and mortgage.

S. W. SHARER."

The Culver mortgage, by its terms, matured May 5, 1879, and he now claims that by the above paper Sharer assumed the mortgage debt, and made arrangements without his knowledge or consent by which the time of payment was extended to January 1, 1879, whereby he is entirely discharged from all liability thereon. But no such consequences follow. Culver was a principal debtor to Dennis, not a surety, and nothing in the certificate prevented him from paying his debt at maturity. There was no agreement to release him, or to extend the time of payment of his debt to Dennis. His debt became due on the 5th of May, 1879, and the bill to foreclose the collateral mortgage was filed September 4, 1879.

A more important question is, when do the payments under the bond given by Sharer to Culver mature, and when do they commence to draw interest ? The condition is to pay $1000 within one month from the date. This has been paid. Then next, " *to pay, as of the date of the decree or order of*

*payments of said debts*, by his honor, the judge of probate of Branch county, all of the proportion of said debts that may be the just and equitable share of said Culver, and saving him at all times harmless thereon, provided it shall not exceed the sum of $5000, that being the sum left in said Sharer's hands, and no other, except in case following, to wit: After the *full and final determination of said share of the said* Culver's liabilities, the amount for him to pay of said debts, and probable costs and charges as said legatee, if there shall be and remain in the hands of said Sharer any part of said $5000, that portion remaining the said Sharer promises to pay said Culver *in four equal annual payments* or installments, with interest, *commencing on the day of the final judgment of the amount due of debts, charges, costs*, etc., as aforesaid, date of commencement of first year, for first installment same time. Interest on said installments is to be at the rate of ten per cent. per annum."

By the terms of the condition of this bond the amount payable to Culver thereon became fixed and determined when final judgment of the amount of debts, charges, etc., was entered in the probate court. The record shows that the administrator applied to the probate court for a final settlement, an accounting was had, and the account allowed. Culver claimed that the administrator had credited himself with the payment of certain debts which were not proper charges against the estate, and appealed from the order allowing the account, to the circuit court of Branch county. The case was referred to a referee by stipulation, who made a report of his finding of facts and law. Culver filed exceptions, and the report was finally confirmed April 11, 1882. This was the earliest date at which it became determined [what was] the amount of debts and charges against the estate, and the amount of the just proportion which Culver ought justly and equitably to pay. Culver's share, as fixed by the final determination of the court, was $2233.20, which, taken from the $5000, would leave $2766.80 due Culver under the condition of the bond, payable in four equal annual installments, with interest at ten per cent. from April 11, 1882. Each

installment of principal would be $691.70, and the first annual installment would be payable April 11, 1883.

Sharer, while insisting that such is the proper construction of the bond, and that such was the final determination of the court as to the amount of debts, and the share of such debts that he has paid for Culver, as shown in said report, now claims and insists that he is entitled to a further credit and allowance upon said bond of $553.57, being the amount he was obliged to pay to take up and procure to be discharged a certain mortgage held by Eggleston, which Jonathan Culver had executed in his life-time upon the north forty acres of the eighty acres conveyed to him by warranty deed against encumbrances by Culver, and for which the bond and mortgage were given. He claims he made such payment September 30, 1873, and he charges in his bill of complaint that it was agreed between Culver and himself that such amount should be endorsed upon said mortgage. This Culver denies, and says that at the time the will of Jonathan Culver was made, Sharer himself and several others were present, when Jonathan Culver said to Sharer that the land he had devised to Culver was covered by the Eggleston mortgage; that he wanted Culver to have it free and clear; and said to Sharer there was wheat enough in the barn to pay it, and that he wanted Sharer to market the wheat and pay off the Eggleston mortgage, which Sharer promised to do. He produced evidence which tended to corroborate this statement, and considerable testimony was introduced upon the point as to whether Sharer had marketed the wheat as requested, and as to the quantity of wheat on hand.

I think it was the intention of the father that his son, Charles E., should have the land devised, free and clear of the Eggleston mortgage. But I do not think the proofs show that Sharer marketed and kept the proceeds of wheat sufficient to pay the claim. The claim, however, cannot be allowed and applied on the bond and mortgage to Culver. Culver denies that there was any such agreement. He says that nothing was said about it at the time he sold the land to Sharer, and received the bond and mortgage from him,

and that he then supposed it had been paid. But if it had not been paid, it was one of the debts against the estate, and a charge against Culver and Sharer as legatees, and comes directly within the language of the condition in the will above quoted. While there was no note or bond accompanying the Eggleston mortgage, it contained a personal covenant to pay the principal and interest, which made it a debt properly payable out of the personal estate of the deceased, in the first instance, if there was sufficient for that purpose. Both Sharer and Culver were, by the will, obliged to pay this debt. Sharer having paid it, could have. brought it in before the probate court with the other debts and charges paid by him. But he neglected to do so, and is now bound by the amount of indebtedness mutually agreed upon as existing, as hereinafter stated.

I have thus far considered the case upon the construction of the bond and the rights of the parties, as they are affected by the force of that instrument. Guided by the language of that instrument, it has been observed that nothing became due and payable thereon until April 11, 1882. Nothing, therefore, was due, in this view of the case, when the original bill was filed in September, 1879, and upon the theory of the complainant in the cross-bill it would follow that the bill should be dismissed. *Kelly v. Bogardus* 51 Mich. 522.

But Culver asserts in his answer to the cross-bill that after said bond was executed, and while Ann Williams' suit was pending (she having been allowed a claim against the estate of about $3600), in the fall of 1876, he and Sharer agreed between themselves that all the property of Jonathan Culver should be liable equally to pay his debts contracted in his life-time; and further agreed that the sum then due from Selleck W. Sharer to said Culver, on said bond and mortgage, to be paid according to its conditions, over and above all the liabilities of said estate, and of said Charles E. Culver, as heir-at-law and legatee, amounted to the sum of, to wit, $2822, computing the indebtedness claimed by Ann Williams as indebtedness of said estate at the sum first allowed in probate court, to wit, $3600; and agreed also and further that

if said claim, upon an appeal thereof, should be reduced or disallowed, that then the sum of $2822 should be increased by so much as his proportion of said claim gained by reason of said appeal or rehearing, to be computed according to the proportion of said estate conveyed to said Charles E. Culver by the will of said deceased, which said proportion was about sixty per cent., and which said last-mentioned sum, by said agreement, was to be added to said $2822, and with it paid by said Selleck W. Sharer to said Charles E. Culver, on the said bond and mortgage; that the claim was afterwards entirely disallowed by a jury in the circuit court, but by stipulation of attorneys a judgment was rendered in said court, against the administrator and in favor of Ann Williams, for $600, without costs, and was certified to the probate court and allowed, together with other amounts, as paid by the administrator in his final account; that he (Culver) appealed from the order allowing said accounts to the circuit court, and the cause was referred to Dallas Boudeman, who reported his findings of fact and law to the court, and it was there confirmed and judgment rendered against said Culver, and that he removed the case to the Supreme Court, where it was pending when the cross-bill was filed. Such are the allegations of the answer.

The proofs show that the Ann Williams claim was originally allowed by the probate judge at $1700; that a rehearing was granted, and new proofs taken, and it was then disallowed by the judge of probate; that she appealed, and her claim was disallowed by the jury, but a judgment was entered in her favor, by stipulation, for the sum of $650, and this sum was certified to the probate court, and was paid by the administrator. This and other litigation cost the estate $260, of which $250 was for the Ann Williams litigation. The proofs further show that at the time it was determined to endeavor to get a rehearing on the Williams claim, all claims against the estate had been proved before the judge of probate, and if this claim was not disturbed, there was nothing to prevent the order contemplated by the bond being entered by the judge of probate; that the parties to the

bond were anxious to come to a settlement and ascertainment of the amount payable on the bond, and they accordingly met at the office of the judge of probate, and there ascertained the total amount of indebtedness against the estate, and agreed between themselves upon the proportion each was liable to pay of such indebtedness; that the proportion Culver was to pay was fifty-two per cent., and that of Sharer was forty-eight per cent. ; that, including the Ann Williams claim of $1700, the total amount which Culver was to pay was agreed to be $2946.52, which amount, it was agreed, should be endorsed upon the bond, subject to a further agreement stated below ; and thereupon the judge of probate, by their directions, made the following endorsement upon the mortgage, which was given to secure said bond, namely :

"$2946.52. *State of Michigan, Branch County, Register's Office—ss.* : Received on the within mortgage twenty-nine hundred and forty-six dollars and fifty-two cents, July 18, 1873, on a final adjustment of all the claims against the estate of J. H. Culver, deceased. It was found that this mortgage was $2946.52 too large, so this endorsement is made so as to leave just the amount due to Charles E. Culver for his portion of his father's estate according to a certain bond."

This receipt, unfortunately, is not dated, and I can find no testimony in the record showing the exact date of the occurrence. Attention is called by the counsel for Sharer to the fact that it is not signed by either party. It was not essential that it should be. It is only testimony taken in connection with the other evidence to show what occurred on that occasion ; more, perhaps, as a memorandum of a disinterested person made on the occasion, and admissible as part of the res gestæ.

It will be observed that the endorsement is made as of the date of the bond and mortgage, and if nothing had been said in the bond as to the time when interest should be computed from, it would be a reasonable conclusion that it should be reckoned from its date, inasmuch as the purchaser was in receipt of the use, rents and profits from that date. The bond, however, fixes the time to be when the liabilities against

the estate should be ascertained and fixed by the judge of probate. The parties interested, by their agreement made in the presence of the judge of probate, themselves determined the amount, and directed that it be endorsed on the bond, subject to a single contingency, and that was, that the Williams claim, included in the amount at $1700, should not be considered as definitely settled at that sum. The claim had been allowed, but it was proposed to make an effort to reopen it, and contest its allowance, and it was then and there agreed that if the claim should be reopened and the amount reduced, a proportionate amount should be paid to Culver on his bond. One James D. Watson, who had been acting for Culver, and was either at that time or afterwards appointed his guardian, was to undertake to furnish the proof to contest the claim; to pay the expenses in the first instance; and it was agreed that for his services he should receive, and Culver and Sharer agreed to give him, one-half of the amount the claim was reduced, and Sharer was to pay Culver back his proportion which had been allowed to Culver from him in the endorsement on the mortgage.

After this agreement was made, Sharer commenced to make payments on the bond. These payments, as he states in his answer to the original bill, and as he charges in his cross-bill, were as follows: November 21, 1874, $150; December 16, 1874, $105; December 25, 1874, $150; December 11, 1875, $101.50. Culver testifies that the first payment was made within a week after the agreement, and endorsement made on the mortgage by Judge Green. This is the nearest the testimony comes to fixing the date of the agreement, and I shall, for the purposes of this case, adopt the 21st of November, 1874, as the date of that agreement. It is worthy of remark, that after two witnesses had testified to this agreement, which was also set up in Culver's answer to the cross-bill, Mr. Sharer was recalled to the stand and testified to other matters, but gave no testimony upon the subject of this agreement. This agreement was one it was entirely competent for the parties to make. They were of full age, and fully comprehended the facts which formed the

subject-matter of their contract. It was also based upon a sufficient consideration. Culver and Sharer were the only ones interested in the payment of the debts, which, by the will, were made a charge upon the legacies and devises to them, and they could legally arrange between themselves as to the proportion each one should bear, and how it should be ascertained. This they did, and no reason is shown to exist why the agreement should not be carried out. Mr. Culver has introduced satisfactory proof of the contract, and Mr. Sharer has acted upon it by making payments as before stated, and by entering into an agreement with Dennis to pay the amount due him on the 8th of January, 1879. Three of the installments would have become due at that time, being more than sufficient to pay the Dennis mortgage.

The Williams claim was reopened, and after contest dislowed by the probate court. The history of the claim has been stated above. The total amount including attorneys' charges, was $900. In the agreement it was called $1700. Fifty-two per cent., or $884, must have been included in the amount endorsed on the mortgage. It should have been 52 per cent. of $900, which is $468. The difference must be subtracted from the endorsement, making the true sum to be endorsed $2530.52. The result is that the amount found to be owing upon the bond and mortgage, November 21, 1874, is $2469.48, to be paid in four equal annual installments of $617.37, with interest at the rate of ten per cent. per annum, from that date. There is a discrepancy of fifty dollars between the amounts claimed by Sharer to have been paid by him upon this bond and the receipts produced by him. He holds a receipt dated November 21, 1874, for $200, and this must be allowed as the correct amount. The payments, therefore, to be allowed on the bond and mortgage are as follows: November 21, 1874, $200; December 16, 1874, $105; December 25, 1874, $150; and December 11, 1875, $101.50.

The title of this bond and mortgage is in the administrator of Henry C. Lewis. No part of the amount decreed to be paid can be decreed to Charles E. Culver in this proceeding. The amount found to be due upon the bond and mort-

gage by the circuit court is substantially correct. A decree must be entered here declaring the amount due complainant in the original bill on the 8th day of April, 1885, to be the sum of $4028.32. Interest thereon will be computed at ten per cent. per annum after that date. The decree will be in the ordinary form of a foreclosure decree, directing a sale if the amount named therein found to be due, with interest and costs, is not paid in six months from the date of said decree.

The other Justices concurred.